UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON SCHELLENBERG and
DAVID W. RIGGLE,

       Plaintiffs,

v.

TOWNSHIP OF BINGHAM and
ROBERT W. FOSTER,

       Defendants.

_____/

Case No. 1:07-cv-713

HON. JANET T. NEFF

## OPINION

In this case brought pursuant to 42 U.S.C. § 1983, plaintiffs allege that the township and former township supervisor violated their equal protection rights in their application for a cluster housing special land use permit. Pending before the Court is defendants' "Motion to Dismiss and/or Motion for Summary Judgment." Plaintiffs filed a response to the motion, and defendants filed a reply. Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the following reasons, the Court grants defendants' motion.

### I. BACKGROUND

Plaintiffs are residents of Michigan who own property in Bingham Township (Leelanau County), Michigan that they wish to develop as a cluster housing project, a project known as "Baywatch." This case arises from their application to the township for a cluster housing special

land use permit (Statement of Undisputed Facts, ¶ 1). Although plaintiffs did not describe in their complaint or amended complaint the alleged disparate treatment they received during the special land use permit application process, plaintiffs have since alleged that the township imposed requirements – "roadblocks" – upon them that were not required by the pertinent ordinance, requirements "with regard to land division approvals, health department permits, and drawings of the proposed residence" (Plaintiffs' Response to Defendants' Motion [Pl. Resp.] 21). Plaintiffs represent that the presentation of their application to the Planning Commission was delayed for nine months until plaintiffs could meet these "requirements" (*id.*).

On November 2, 2006, plaintiffs' application was scheduled for a December 7, 2006 public hearing before the Planning Commission (Undisputed Facts ¶ 2). Plaintiffs received notice of the public hearing (*id.* ¶ 3). At the public hearing, the Planning Commission denied the application by a 6-1 vote, and plaintiffs received the Record of Action "sometime around Christmas after [the] December 7th meeting" (*id.* ¶ 4).

By separate correspondence dated April 25, 2007 and April 26, 2007, plaintiffs were informed of their right to file another application (Undisputed Facts, ¶ 6). The parties agree that the Bingham Township Zoning Ordinance provides that an application can be resubmitted 120 days after the denial (*id.* ¶ 5). Plaintiffs did not re-apply for a permit (*id.* ¶ 7).

Instead, on April 30, 2007, plaintiffs filed suit in the Leelanau County Circuit Court, *Sharon Lee Schellenberg and David W. Riggle v. The Bingham Township,* Case No. 07-7475-CZ, appealing the denial of the special use permit and claiming monetary damages for the allegedly unlawful taking of their property (*id.* ¶ 8). Plaintiffs alleged that the township failed to comply with requirements of the zoning ordinance; that the township violated the zoning ordinance and Michigan

2

statutes; and that the "denial of Plaintiffs' application was purely arbitrary, capricious, and unfounded" (State Court Compl. ¶ 16). Defendants moved for summary disposition, arguing that the state court lacked subject matter jurisdiction because plaintiffs failed to timely appeal from the Planning Commission's decision (Undisputed Facts, ¶ 11).

On July 25, 2007, while the state court proceeding was still pending, plaintiffs filed this federal suit against the township and the former township supervisor pursuant to 42 U.S.C. § 1983, alleging an equal protection violation. Plaintiffs' equal protection theory is that defendants have "intentionally imposed requirements on plaintiffs in regard to the Baywatch project not required of similarly situated individuals on similar projects" (Compl. ¶ 11). Plaintiffs' complaint is divided into a disparate treatment claim (Count I) and an "ill will or illegitimate animus" claim (Count II). On the latter, plaintiffs allege that "[t]he illegitimate animus or ill will was harbored by Township employees, including the former supervisor, Robert Foster, and given effect through the Township's decisions and policies" and that "[t]he ill will stems from numerous disputes that the Defendants and Plaintiffs have had over several years, several of which resulted in litigation" (*id.* ¶¶ 22-23).

On September 4, 2007, the state court entered an order granting defendants' motion for summary disposition (Undisputed Facts, ¶ 12). Plaintiffs sought reconsideration and to have the state court judge disqualified; however, both motions were denied, and plaintiffs did not attempt any further appeal of the state court matter (*id.* ¶ 13).

Following a pre-motion conference in this Court, defendants filed the pending dispositive motion, seeking either a dismissal of the case pursuant to FED. R. CIV. P. 12(b) or, in the alternative, summary judgment in their favor pursuant to FED. R. CIV. P. 56 (Dkt 34). Plaintiffs filed a response to the motion (Dkt 36), and defendants filed a reply (Dkt 37). The pretrial conference and trial dates

were adjourned while the parties engaged in settlement negotiations with the magistrate judge (Dkts 45-48). However, on March 5, 2009, the magistrate judge indicated that further settlement negotiations would not be fruitful (Dkt 49).

## II. ANALYSIS

Defendants advance several independent arguments, including alternative arguments why this Court should decline to reach the merits of plaintiffs' claim. This Court is persuaded by defendants' argument that plaintiffs have not established a jury-submissible equal protection claim.

### A. *Rooker-Feldman*

Defendants argue under FED. R. CIV. P. 12(b)(1) that this Court lacks jurisdiction over the claims against them (Df. Mot. 2, 12-14). Specifically, defendants assert that plaintiffs' complaint is barred by the *Rooker-Feldman* doctrine because (1) plaintiffs' claim in federal court arises from "the Planning Commission decision and the State Court's Order Granting Defendants' Motion for Summary Disposition," and (2) plaintiffs' federal claim is "inexorably intertwined" with the Planning Commission decision and the state court judgment dismissing the appeal. Defendants argue that the *Rooker-Feldman* doctrine provides a complete jurisdictional defense to plaintiffs' constitutional claim.

In response, plaintiffs argue that the *Rooker-Feldman* doctrine does not apply to this case because they filed their claim in federal court before the state court action was resolved. According to plaintiffs, application of the *Rooker-Feldman* doctrine is not triggered simply by entry of the judgment in state court.

The *Rooker-Feldman* doctrine takes its name from two Supreme Court cases – *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923), and *Dist. of Columbia Ct. of Appeals v. Feldman,* 460 U.S.

4

462 (1983), through which the Supreme Court instructed that its appellate jurisdiction over state court decisions precludes a federal district court from exercising jurisdiction over the matters. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 283 (2005); *Lawrence v. Welch,* 531 F.3d 364, 368 (6th Cir. 2008). The Supreme Court held that application of the doctrine is "confined to cases ... brought by state court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil,* 544 U.S. at 284.

Here, plaintiffs were not "state court losers" at the time they filed their federal court action The state court judgment was not rendered before these proceedings in district court commenced.

Moreover, plaintiffs are not inviting this Court's review and rejection of the state court judgment. Plaintiffs have not alleged that the dismissal in state court is itself unconstitutional or in violation of federal law. Plaintiffs do not argue that the state court reached the wrong result in dismissing their appeal. Plaintiffs' constitutional challenge is to the character of the administrative process afforded them by the township, not to the validity of the state court judgment. *See, e.g., Powers v. Hamilton County Pub. Defender Comm'n,* 501 F.3d 592, 606 (6th Cir. 2007) ("The *Rooker-Feldman* doctrine has no bearing on Powers' claims because he does not allege that he was deprived of his constitutional rights by the state-court judgment.").

Last, merely because the state and federal proceedings are "intertwined" does not compel application of the *Rooker-Feldman* doctrine. *See McCormick v. Braverman,* 451 F.3d 382, 394-95 (6th Cir. 2006). As the Sixth Circuit Court of Appeals noted, the Supreme Court in *Exxon Mobil* "implicitly repudiated the circuits' post-*Feldman* use of the phrase 'inextricably intertwined' to

extend *Rooker-Feldman* to situations where the source of the injury was not the state court judgment." *Id.* at 393.

If there is some other source of injury, such as a third party's actions, then the plaintiff asserts an independent claim. *Lawrence,* 531 F.3d at 368 (quoting *McCormick,* 451 F.3d at 394). "The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman,* of the state-court judgment." *McCormick,* 451 F.3d at 394 (quoting *Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 87-88 (2d Cir. 2005)).

Because the state court judgment of dismissal is not the "source" of the injury plaintiffs allege, application of the *Rooker-Feldman* doctrine does not divest this Court of jurisdiction over the subject matter. Therefore, dismissal under Rule 12(b)(1) is not warranted on this basis.

### B. *Claim Preclusion*

Under FED. R. CIV. P. 56, defendants argue that they are alternatively entitled to dismissal based on application of the claim preclusion doctrine (Df. Mot. 3, 14-16). Defendants emphasize that federal courts are not to be used as state courts of appeal.

Plaintiffs respond that because the state court action was dismissed for lack of subject matter jurisdiction, the state court action does not preclude their claims in this Court. Indeed, plaintiffs argue that defendants should be judicially estopped from arguing that the state court dismissal constitutes a decision on the merits where defendants previously argued that the state court lacked jurisdiction to hear plaintiffs' claims.

Claim preclusion, or res judicata, provides that "a final judgment on the merits bars all claims based upon the same complaint by the parties or their privities, including those claims which were

6

not but could have been litigated." *George v. United Ky. Bank, Inc.,* 753 F.2d 50, 52 (6th Cir. 1985) (citing *Montana v. United States,* 440 U.S. 147, 153 (1979)). In Michigan, the doctrine of res judicata is applicable when (1) the prior action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first action; and (3) both actions involved the same parties or their privies. *Eaton County Rd. Comm'rs v. Schultz,* 521 N.W.2d 847, 850 (Mich. Ct. App. 1994).

Here, as plaintiffs point out (and defendants do not dispute), the "prior action," to wit, the state court action, was dismissed for lack of subject matter jurisdiction. The state court's lack of subject matter jurisdiction prevented it from rendering a decision on the merits. *See Bowie v. Arder,* 490 N.W.2d 568, 583 (Mich. Ct. App. 1992) ("When a court lacks subject matter jurisdiction to hear and determine a claim, any action it takes, other than to dismiss the action, is void."). *See also* MICH. CT. R. 2.504(B)(3) (providing that an involuntary dismissal "*other than a dismissal for lack of jurisdiction* ... operates as an adjudication on the merits*") (emphasis added). Therefore, even assuming arguendo that plaintiffs could have resolved the issues at bar in their state case, the doctrine of res judicata does not bar this action because the state case was not decided on the merits. Accordingly, summary judgment under Rule 56 is not warranted on this basis.

C. *Equal Protection Claim*

Defendants argue that they are entitled to dismissal because plaintiffs "have no viable equal protection claim" (Df. Mot. 3, 17-25). Defendants assert that plaintiffs have not pleaded or otherwise identified in deposition testimony any similarly situated projects. Moreover, defendants argue that even if plaintiffs identified similarly situated projects, plaintiffs' equal protection claim

7

fails because the Planning Commission's decision clearly passes the "rational basis" test.[1] Defendants also argue that plaintiffs do not have a viable § 1983 claim against the township inasmuch as plaintiffs made no allegations of any written policy or any allegations of facts to support a claim or custom. Last, defendants argue that plaintiffs have not stated a viable cause of action against defendant Foster in his official or individual capacity and that Foster, in any event, is entitled to both absolute and qualified immunity.

Plaintiffs argue that they have "stated a viable equal protection claim ... and there is more than sufficient evidence to warrant a trial on the disputed issues of material fact" (Pl. Resp. 16). Plaintiffs opine that "all applicants" for a special land use permit are similarly situated with regard to the requirements for such an application. According to plaintiffs, any discretion the Planning Commission may have to treat applicants differently after the application process is complete and the approval process is underway does not exist during the Commission's preliminary review of an application. Alternatively, plaintiffs assert that they have identified similarly situated projects that the township treated differently from their Baywatch project. Last, plaintiffs argue that they have stated a viable equal protection claim against the township because the actions about which they complain are the "policies" of the township.

---

[1] Defendants also argue that plaintiffs' decision to not *re*-submit their special land use permit application constitutes a failure to exhaust their administrative remedies that should result in dismissal of their complaint (Df. Mot. 2, 11-12). Because this Court ultimately concludes that defendants are entitled to judgment as a matter of law on plaintiffs' claim, this Court has not considered defendants' failure-to-exhaust argument.

1. Applicable Standards and Burdens of Proof

a. *Motion Standard*

Defendants, who filed a joint "Motion to Dismiss and/or Motion for Summary Judgment," do not specify under which rule of civil procedure this particular set of arguments is brought. Although both parties employ some "failure to state a claim" language from FED. R. CIV. P. 12(b)(6), this Court has determined that defendants' essential argument that plaintiffs "have no viable equal protection claim" implicates Rule 56(c) inasmuch as the parties present and rely upon evidence outside the pleadings in making their arguments to the Court.

A moving party is entitled to a grant of its motion for summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The court must consider the evidence and all reasonable inferences in favor of the nonmoving party. *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008); *Hamilton v. Starcom Mediavest Group, Inc.,* 522 F.3d 623, 627 (6th Cir. 2008).

The party moving for summary judgment has the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Slusher,* 540 F.3d at 453. "Once the moving party supports its motion for summary judgment, the opposing party must go beyond the contents of its pleadings to set forth specific facts that indicate the existence of an issue to be litigated." *Slusher,* 540 F.3d at 453 (citing FED. R. CIV. P. 56(e)). The ultimate inquiry is "whether the state of the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

b. *Section 1983/class-of-one Equal Protection*

To state a viable claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that he was deprived of a right, privilege, or immunity secured by the Federal Constitution or laws of the United States; and (2) that the deprivation was caused by a person while acting under color of state law. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). The liability of a local government under § 1983 depends solely on whether the plaintiff's constitutional rights have been violated as a result of a "policy" or "custom" attributable to the government. *Holloway v. Brush,* 220 F.3d 767, 772 (6th Cir. 2000) (en banc).

Government officials who perform discretionary functions are entitled to qualified immunity from civil damages suits arising out of the performance of their official duties unless they violate "'clearly established constitutional rights of which a reasonable person would have known.'" *Purisch v. Tenn. Tech. Univ.,* 76 F.3d 1414, 1423 (6th Cir. 1996) (quoting *Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir. 1995)). However, "[t]he threshold inquiry in a qualified immunity analysis is whether a constitutional violation occurred at all." *Id.*

Plaintiffs assert a violation of their rights under the Equal Protection Clauses of the United States and Michigan Constitutions. U.S. CONST. amend. XIV; MICH. CONST. art. 1, § 2. The state and federal Equal Protection Clauses are coextensive. *TIG Ins. Co., Inc. v Dep't of Treasury,* 629 N.W.2d 402, 407 (Mich. 2001). The Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Under the Equal Protection Clause, states cannot make distinctions that (1) burden a fundamental right, (2) target a suspect class, or (3) intentionally treat one individual differently from others similarly situated without any rational basis. *Taylor Acquisitions, L.L.C. v. City of Taylor,* 313 Fed.

10

Appx. 826, 836 (6th Cir. 2009); *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 312 (6th Cir. 2005).

Where, as here, a plaintiff alleges a violation of the third type, the plaintiff is said to proceed on a "class of one" theory. *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 565 (2000) (holding that the plaintiff-property owner stated a cognizable equal protection claim in alleging that the village intentionally and arbitrarily demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the village required only a 15-foot easement from other similarly situated property owners); *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.,* 470 F.3d 286, 298 (6th Cir. 2006).

To succeed on a "class of one" equal protection claim, a plaintiff must first prove that he has been treated differently from similarly situated individuals. *Braun v. Ann Arbor Charter Twp.,* 519 F.3d 564, 575 (6th Cir. 2008); *Silver v. Franklin Twp. Bd. of Zoning Appeals,* 966 F.2d 1031, 1036-37 (6th Cir. 1992). To satisfy this threshold inquiry, the plaintiff must allege that he and other individuals who were treated differently were similarly situated "in all material respects." *TriHealth, Inc. v. Bd. of Comm'rs,* 430 F.3d 783, 790 (6th Cir. 2005). "Disparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational. Conversely, disparate treatment of persons is reasonably justified if they are dissimilar in some material respect." *Id.*

2. Plaintiffs' Showing

a. *"All Applicants"*

Plaintiffs first attempt to fill the evidentiary gap with no evidence at all. Plaintiffs opine that "all applicants" for a special land use permit are similarly situated with regard to the requirements

11

for such an application, i.e., that the township must treat all applicants similarly "as far as what is and what is not required under the zoning ordinance for a special land use permit" (Pl. Resp. 18-19). According to plaintiffs, "[t]he township was treating applicants differently before the time that the information contained in the applications allowed the township to draw any distinctions between the applicants at all" (*id.* 20).

Plaintiffs' position is not persuasive. The application process is, by nature, an individualized process. Zoning statutes and ordinances permit a property owner to apply for and obtain – in a proper case – authorization of a special use or an exception or variance from the restrictions imposed by the ordinance. Although the statute or ordinance establishes a standard to govern the application process in all cases, requiring additional or more specific information from an applicant does not, *standing alone,* establish an equal protection violation. Rather, plaintiffs must identify other applicants similarly situated to them that were treated differently. "[B]are allegations that 'other' applicants, even 'all other' applicants, were treated differently" is insufficient." *Taylor Acquisitions,* 313 Fed. Appx. at 836 (quoting *GJR Inv., Inc. v. County of Escambia,* 132 F.3d 1359, 1367-68 (11th Cir. 1998)).

The Sixth Circuit's decision in *Braun* is instructive. In *Braun,* 519 F.3d at 567, the plaintiffs sought to sell their commercial farm property to a real-estate developer and asked the defendant township to rezone their property for residential housing purposes. Following two hearings, the township sent the plaintiffs a request with a list of site-specific information that the commission stated was relevant to its determination, but which was not required by the zoning ordinance. *Id.* The plaintiffs did not accede to this request, indicating by letter that the request was unauthorized and that they had provided all of the information required by the relevant zoning ordinance. *Id.* At

a third hearing, the planning commission voted to deny the plaintiffs' petition. *Id.* at 567-68. The township board adopted a resolution to deny the application. After unsuccessfully seeking relief in state court, the plaintiffs filed suit in federal court, alleging various claims for relief, including an equal protection claim under 42 U.S.C. § 1983. The district court granted the township summary judgment, and the plaintiffs appealed.

Acknowledging that a "class of one" may successfully bring an equal protection claim, the Sixth Circuit Court of Appeals nonetheless emphasized that "the basis for any equal protection claim is that a locality has treated similarly situated individuals differently." *Braun,* 519 F.3d at 575. The Sixth Circuit observed that "although the plaintiffs claimed that they had been treated differently from other individuals seeking rezoning, they had failed to allege any specific examples of similarly situated individuals, let alone evidence of situations where the proposed rezoning was similar in scale or impact." *Id.* The Sixth Circuit held that because the plaintiffs failed to make any concrete allegations with respect to similarly situated landowners, it need not apply the rational basis test and was instead mandated to grant summary judgment in the defendant's favor. *Id.*

Here, too, plaintiffs have not satisfied their evidentiary burden merely by taking the position that "all applicants" are similarly situated with regard to the requirements for a special land use application. "[A] plaintiff must show that "these 'other' applicants were similarly situated to the plaintiff." *Taylor Acquisitions, supra.*

b. *The Whiting/Weaverstad Project*

Alternatively, plaintiffs assert that they have, in fact, identified similarly situated projects that the township treated differently from their Baywatch project. However, plaintiffs did not make any such identification in their complaint. They proffered only the general statement that the

13

township intentionally imposed requirements on plaintiffs "not required of similarly situated individuals on similar projects" (Amend. Compl. ¶¶ 11, 18).

In briefing this issue in response to defendants' motion, plaintiffs identify only one project as being similarly situated to Baywatch: the Whiting/Weaverstad project (Pl. Resp. 20-21). According to plaintiffs, the Whiting/Weaverstad project is directly adjacent to their property and is identical to their Baywatch project in terms of zoning designations and "all essential characteristics." Plaintiffs opine that the only "real difference" between the two projects is the identity of the applicants for the cluster housing development permit. Plaintiffs rely upon the deposition testimony of Rochelle Rollenhagen, the then acting planning/zoning administrator for the township, to support their factual assertions that the township treated the Whiting/Weaverstad project differently from how it treated the Baywatch project.

This Court has carefully reviewed the deposition testimony of Ms. Rollenhagen. She testified that "every case is different" (8/28/2008 Rollenhagen Dep [Pl. Exh. 2] 30). For example, Rollenhagen indicated that unlike the Whiting/Weaverstad project, the Baywatch project had sewage issues that drew the attention of the health department (Dep 152). Specifically, in contrast to certain cabins on the Whiting/Weaverstad project that would not be occupied, "[Ms. Schellenberg] had a problem with splitting her lot ... if something had happened to her septic system, she wouldn't be able to replace it. And that was a major concern of the township's, because it would be one of those things where she would not be able to live in the house" (Dep 152-53, 160-61).

Rollenhagen testified that the ordinance did not require applicants for a special land use permit to first obtain a health department permit for water and sewer, but the ordinance did require applicants to be "in compliance" with the requirements of the district health department (Dep 155-

14

59). She testified that it was therefore her practice to "hold up" a special land use permit application until she received "some review" from the health department (Dep 14-15). Rollenhagen indicated that the Whiting/Weaverstad project applicants had "some review by the health department" (Dep 152). She explained that the "Weaverstads did not have to go through the same review [as plaintiffs because] they just did not have the same problem" (Dep 166).

Plaintiffs' assertion that the only "real difference" between the Baywatch and Whiting/Weaverstad projects is the applicants' identities cannot stand in the face of Rollenhagen's testimony. As her testimony on the sewage issue alone illustrates, plaintiffs' project is distinguishable from the Whiting/Weaverstad project by the features of their parcel and its proposed uses. In at least this material respect, the Baywatch project is *not* similarly situated to the Whiting/Weaverstad project.

Admittedly, landowners have a difficult task in satisfying the similarly-situated inquiry in the land-use context. *See Taylor Acquisitions,* 313 Fed. Appx. at 836-37 (acknowledging the effect of context and timing to the similarly-situated inquiry in the land-use context). However, "disparate treatment of persons is reasonably justified if they are dissimilar in some material respect." *TriHealth,* 430 F.3d at 790. Like the district court in *Braun,* this Court is compelled to grant summary judgment in defendants' favor because plaintiffs have not produced evidence to satisfy the similarly-situated prong of this Court's mandated inquiry.

III

In summary, the *Rooker-Feldman* and claim preclusion doctrines do not prevent this Court from exercising jurisdiction over the equal protection claim plaintiffs allege in their complaint. However, having considered the merits of the claim, this Court determines that defendants are

15

entitled to judgment as a matter of law. Accordingly, this Court grants defendants' "Motion to Dismiss and/or Motion for Summary Judgment."

A Judgment consistent with this Opinion will be entered.


DATED: July 27, 2009                          /s/ Janet T. Neff
                                              JANET T. NEFF
                                              United States District Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON SCHELLENBERG and
DAVID W. RIGGLE,

       Plaintiffs,                       Case No. 1:07-cv-713

v.                                       HON. JANET T. NEFF

TOWNSHIP OF BINGHAM and
ROBERT W. FOSTER,

       Defendants.

_____/

## **JUDGMENT**

In accordance with the Opinion entered this date:

**IT IS HEREBY ORDERED** that defendants' Motion to Dismiss and/or for Summary Judgment [34] is GRANTED.

DATED: July 27, 2009                          /s/ Janet T. Neff
                                                        JANET T. NEFF
                                                        United States District Judge